**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**George M. HART, dba San Diego Cabinets, et al., Respondents.**

**No. 71–1021.**

United States Court of Appeals, Ninth Circuit.

Nov. 24, 1971.

Rehearing Denied Jan. 7, 1972.

---

**216**

———◆———

Thomas Selfin (appeared), Frank H. Itkin, of NLRB, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Ralph E. Kennedy, Director, NLRB, Los Angeles, Cal., for appellant.

Eddy S. Feldman, Los Angeles, Cal., for appellees.

Before BARNES and MERRILL, Circuit Judges, and THOMPSON, District Judge.*

PER CURIAM:

This is an application to enforce an order of the National Labor Relations Board, which found respondent employers had violated Sec. 8(a) (5) and (1) of the Act by refusing to recognize and bargain with a Union on an individual, single-employer basis in the San Diego area.

Respondents are the individual employers of workmen (mainly carpenters), who have refused, as employers, to bargain with Carpenters Local Union No. 2020, United Brotherhood of Carpenters & Joiners of America, AFL–CIO—herein "Local 2020"—as "separate units at each respondent's premises." (*Cf.* 183 NLRB No. 100).

### FACTS

Following their ten year practice, in 1966 Local 2020 and the San Diego Lumbermen's Association (herein "S.D. Association"), negotiated a labor contract, expiring July 31, 1969. The nine respondents herein were not members of the Employer's S.D. Association, but seven of the nine, with another 40 "independent employers" in the San Diego area, negotiated separate and individual contracts containing essentially the same terms with the Local 2020 for the same period of time. Two respondent employers (Randell and C. A. Homes) did not sign contracts. However, they complied with the terms and conditions of the 1966–69 S.D. Association contract.

On May 29, 1969 the Union served the Lumbermen's S.D. Association and each of the independent employers, including all respondents, with a 60 day notice of "our desire to change, modify or terminate" the contract. The Union added: it stood ready, during June, 1969 to negotiate with employers, and added:

"If we have no response to this notice, we will assume it is your intention to abide by the outcome of negotiations between our Union and the Lumbermen's Association.

Thank you for an early response."

The Lumbermen's S.D. Association and Local 2020 agreed on a settlement approved by Union vote on July 30,

---

* The Honorable Bruce R. Thompson, United States District Judge, District of Nevada, Reno, Nevada, sitting by designation, expressed tentative approval of an order to enforce the petition, but, due to illness, did not participate in, or join in, this opinion herein filed.

1969. Later on that day, the Union notified all independents that it proposed to continue bargaining on "an individual employer basis," and suggested an August 2d meeting.

Meanwhile, between July 26 and July 30, 1969, D & G (an individual employer not joined as a respondent), and the seven respondents, applied for membership in the "Southern California Association of Cabinet Manufacturers", (herein the "S.C. Association"), a multi-employer bargaining association that had signed a "1968–71 Master Labor Agreement" with the "Twelve Southern California Counties Mill Conference of Unions" (herein the "Conference").

Section 12(a) of that agreement (between "Southern California Association" and "Conference"), provided:

> "All employers who are or who become members of the Southern California Association . . . are parties to this Agreement and are entitled to the benefits and subject to the obligations thereof. . . ."

Notice of their membership in the "S. C. Association" was sent by it to the "Conference" and a copy to "Local 2020."

One respondent (Cross), then wired Local 2020 that it was a member of "S. C. Association", and that the "S.C. Association" was the sole bargaining agent for its members, hence Cross could not meet with Local 2020 to negotiate on August 2, 1969.

On August 2, 1969, some independents met with Local 2020, but no respondents. Those present signed an Interim Agreement with Local 2020. Before the meeting concluded C. A. Homes and Kent Cross appeared and Homes signed an interim agreement with Local 2020 for himself, and offered, as agent for the Association, to sign "under protest" an interim agreement as an agent for the Association, and on behalf of all other respondents. Local 2020 refused to accept any contract or permit any execution unless such act bound every respondent as a separate, independent employer. This was not agreeable to Homes, who refused to so sign.

On August 4, 1969, Local 2020 struck all independents who had not signed a separate Interim Agreement. Each respondent then signed an Interim Agreement under protest.

The Board, on the above facts, found that the respondents had not been relieved of their obligations to bargain with Local 2020 by their affiliation with the "S.C. Association", and ordered them to meet and bargain upon request of the Union.

### The Law

"[T]he test to be applied in determining the status of a multi-employer unit is 'whether the members of the group have indicated from the outset an unequivocal intention to be bound in collective bargaining by group rather than individual action, and whether the union representing their employees has been notified of the formation of the group and the delegation of bargaining authority to it, and has assented and entered upon negotiations with the group's representative.' See Van Eerden Company, 154 NLRB 496, 499 (1965); The Kroger Company, 148 NLRB 569, 573 (1964)." Western States Regional Council No. 3, Woodworkers v. N.L.R. B. [130 U.S.App.D.C. 176], 398 F.2d 770, 773 (C.A.D.C., 1968); Cf. N.L. R.B. v. Truck Drivers Local Union No. 449, etc. (Buffalo Linen) 353 U.S. 87 [77 S.Ct. 643, 1 L.Ed.2d 676] (1957)

"[T]he validity of a multi-employer unit depends not only upon the intent of the employers, but the acceptance of the group unit by the union." N. L.R.B. v. Bagel Bakers Council of Greater New York, 434 F.2d 884, 886–887 (C.A.2, 1970), and cases cited. For, as the Court noted in Publisher's Association of New York City v. N.L.R.B., 364 F.2d 293, 294–295 (C. A.2, 1966), cert. denied, 385 U.S. 971 [87 S.Ct. 509, 17 L.Ed.2d 435], "a multi-employer unit is a purely consensual device"; therefore, "[m]utual

consent * * * is a basic ingredient" although, "the Board has not found inappropriate a unit where there was a consent as evidenced by a history of a multi-employer bargaining." (*idem*, pp. 294–295)

The Court restated the controlling principles for withdrawal from multi-employer bargaining in Publisher's Association of New York City v. N.L.R.B., *supra*, 364 F.2d at 295, as follows:

"The Board has held that an employer may freely withdraw, subject only to the requirement that, unless there is mutual consent, notice of withdrawal must be timely and unequivocal. [Retail Associates, Inc., 120 N.L.R.B. 388 (1958); Anderson Lithograph Co., 124 N.L.R.B. 920, 928–929 (1959), enforced *sub nom.*] N.L.R.B. v. Jeffries Banknote Co., 281 F.2d 893 (C.A.9, 1960)."

We quote with approval the petitioner's brief:

"In United Fryer & Stillmen, Inc., 139 NLRB 704, 708 (1962), the union was a party to a multi-employer agreement with an association as well as party to a separate, individual agreement with the employer, United Fryer. United, during the term of these agreements, joined the association. Later when the union served timely notice of its desire to negotiate a new agreement, the association responded with a communication indicating that United had joined the association and that the association would bargain on behalf of United as part of the multi-employer unit. The union, however, declined to recognize United as part of the association and renewed its request for separate, independent bargaining on the preexisting single-employer basis. The association insisted on a multi-employer bargaining. The Board sustained the Trial Examiner's finding that United had refused to bargain in good faith in violation of Section 8(a) (5) of the Act, inasmuch as a single-employer unit is presumptively appropriate;

previous bargaining was on a single-employer basis; the association's notice to the union of its desire to negotiate on a multi-employer basis was untimely because it was served after the union had served a timely request on the employer to bargain on a single-employer basis for renewal of their separate, independent agreement; and the union had refused to consent to the change in the bargaining relationship. And see, Moveable Partitions, Inc., 175 NLRB No. 149 (slip op. pp. 4–6) 71 LRRM 1095 (1969)."

The Board suggests the above cases are controlling here. We agree. We are advised of no facts which make the Board's finding that Local 2020 had neither *practised* nor *consented* to multi-employer bargaining alone, clearly erroneous.

The additional contentions of individual respondents Cross and C. A. Homes are likewise without merit, in view of the findings of fact made by the Board.

The petition to enforce is granted.