NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ASSOCIATED SHOWER DOOR CO.,
INC., et al., Respondent.

No. 74–1033.

United States Court of Appeals,
Ninth Circuit.

Feb. 24, 1975.

231

Abigail Cooley, of N.L.R.B. (argued), Washington, D. C., for petitioner.

Norman H. Kirshman (argued), Goldstein, Gentile & Kirshman, Beverly Hills, Cal., for respondent.

Before CHAMBERS and KOELSCH, Circuit Judges, and JAMESON,* District Judge.

## OPINION

KOELSCH, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order against Associated Shower Door Co., Inc., and Century Shower Door Company, Inc. (the Companies), upon the Board's findings that the Companies violated section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1). The Board's decision and order are reported at 205 N.L.R.B. No. 95 (1973).

Briefly, the relevant facts are as follows: In August, 1971, a multi-employer bargaining unit of which the Companies were members (the Association) [1] and the certified representative of certain employees of Association members (the Union) [2] commenced collective bargaining. The negotiations reached an impasse on September 15, 1971, and the following day the Union called a strike against all

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Association of Shower Door Industries, Inc., which, at the time negotiations commenced, had ten employer-members.

2. Glaziers & Glassworkers Union Local 636, International Brotherhood of Painters and Allied Trades, AFL–CIO.

Association members. Thereafter, between September 17 and September 23, 1971, three Association members other than the Companies individually negotiated agreements with the Union, and a fourth member withdrew from the Association without objection.

Early in October, the Companies and one other Association member each formally notified, in writing, the Association and the Union of its withdrawal from the Association. However, a Union attorney informed each of these employers that the Union viewed the attempted withdrawals as untimely and would consider the employers bound by any agreement subsequently reached between the Union and the Association.

On October 19, 1971, the Union and the Association met again; representatives of both Companies were present at this meeting. And on November 1, 1971, when the Association members met among themselves to draft new proposals, representatives of Century were present.

About November 11, 1971, the Association's president, Herman Propker, executed an agreement with the Union, purportedly on behalf of the Association. The Companies' alleged violations of section 8(a)(5) and (1) of the Act are predicated on their failure to accept and comply with the terms of that agreement.

The Board initially takes the position that the Companies' withdrawals were ineffective because, once collective bargaining involving a multi-employer unit has begun, neither the employer group nor an individual employer nor the union may withdraw from such bargaining without the consent of the opposing party, absent unusual circumstances. *See* NLRB v. Brotherhood of Teamsters, etc., Local No. 70, 470 F.2d 509, 509–510 (9th Cir. 1972), cert. denied 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 54 (1973); NLRB v. Hart, 453 F.2d 215, 217–218 (9th Cir. 1971), cert. denied 409 U.S. 844, 93 S.Ct. 46, 34 L.Ed.2d 84 (1972); NLRB v. Strong, 386 F.2d 929, 931 (9th Cir. 1967), cert. denied 390 U.S. 920, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968); NLRB v. Jeffries

Banknote Co., 281 F.2d 893, 896 (9th Cir. 1960); Retail Associates, Inc., 120 N.L.R.B. 388 (1958). We decline to enforce on this basis under the circumstances of this case.

■ The Board has held that a union which has commenced collective bargaining with a multi-employer unit may withdraw from the multi-employer unit with respect to one or more employers while continuing multi-employer bargaining with those employers remaining in the multiple unit. Pacific Coast Association of Pulp and Paper Manufacturers, 163 N.L.R.B. 892, 895–896 (1967). Since the Board has committed itself to preserving the equality of withdrawal rights in the multi-employer unit situation, *see* The Evening News Association, 154 N.L.R.B. 1494, 1495–1497 (1965), enforced sub. nom. Detroit Newspaper Publishers Association v. NLRB, 372 F.2d 569, 572 (6th Cir. 1967), it seems only fair that, when an impasse is reached and a union then engages in selective picketing and enters into substantial individual agreements with employers who had been members of the multi-employer unit, the withdrawal of the remaining members of the unit, if unequivocally communicated, should be permitted. *See* NLRB v. Hi-Way Billboards, Inc., 500 F.2d 181, 183–184 (5th Cir. 1974); Fairmont Foods Company v. NLRB, 471 F.2d 1170, 1172–1174, 1174 n. 1 (8th Cir. 1972); Connell Typesetting Company, 212 N.L.R.B. No. 140 (1974). Were the rule otherwise, a union could reach an agreement with one or more employers and then whipsaw the remaining members of the significantly fragmented and weakened multi-employer unit. *See Hi-Way Billboards, supra,* at 183; *Connell Typesetting, supra,* slip-opinion at 9–11. Here the Companies were entitled to, and did by clear written notice, withdraw from the Association.

The Board next contends that, even if the withdrawals were effective when tendered, the subsequent conduct of the Companies constituted a retraction of those withdrawals and "reestablish[ed],

through either actual or apparent authority, an agency relationship with the representatives who had formerly represented the old multi-employer unit."[3] We agree.

The relevant findings of the Administrative Law Judge, accepted by the Board, are as follows:

"I find on the basis of Geffner's testimony, corroborated by Propker and Robin, that Treasurer Siegel of Century and Siefert of Associated attended and participated in the negotiations between the Association and the Union, discussed the terms of the Union's proposals and the Association's counter-proposals, assisted in the preparation of the latter, and at no time informed the Union negotiators they were in a capacity other than as representatives of the Association. I further find and conclude, on the basis of the foregoing, that Siegel and Siefert attended and participated in the October 19 Association-Union negotiations as representatives of the Association.

.   .   .

"It is clear that Associated [and] Century .   .   . tried to secure the best of two worlds; by continuing in the negotiations between the Association and the Union following their October withdrawal, they attempted to secure terms to their satisfaction; by filing a purported withdrawal from the Association, they attempted to preserve an opportunity to reject any Association-Union agreement if dissatisfied therewith and to bargain for better terms in individual negotiations.

"I find, however, that by their appearance and participation in the Association-Union negotiations after service upon the Union of their October 3–5 withdraw[al] notices, Associated [and] Century .   .   . retracted their withdrawals from multi-employer

bargaining and accepted the Union's October 8 objection to their withdrawal and its insistence upon their remaining in and bound by the results of the multi-employer bargaining which occurred subsequent to their October withdrawal."

We have carefully reviewed the record in light of the standard enunciated by the Supreme Court in Universal Camera Corp. v. NLRB, 340 U.S. 474, 490–497, 71 S.Ct. 456, 95 L.Ed. 1372 (1951), to ascertain whether these findings are supported by substantial evidence on the record as a whole. The question is a close one, but, since the propriety of the findings turns in large part on the Administrative Law Judge's estimation of the credibility of witnesses and concerns matter peculiarly within the expertise of the Board, we conclude that the findings are supported by substantial evidence on the record as a whole.

The Companies' remaining contentions are without merit.[4]

The Board's order will be enforced.

---

**3.** The Board employs language borrowed from the concurring opinion of Chairman Miller, with which we are in essential agreement. See 205 N.L.R.B. No. 95, slip-opinion at 4–5.

**4.** Under the circumstances, the Board's reservation until the compliance stage of the pro-

ceedings of the resolution of any conflicts between the terms of the agreement and relevant wage and price freeze regulations, as well as the question of C.I.S.C. approval, was proper.