**AUDIT SERVICES, INC., a Montana Corporation, Plaintiff,**

v.

**NORTH MONTANA SERVICE INDUSTRIES, INC., Defendant.**

**No. CV 77–52–GF.**

United States District Court, D. Montana, Great Falls Division.

Oct. 13, 1978.

Cure & Borer, Great Falls, Mont., for plaintiff.

John Warner, Weber, Bosch, Kuhr, Dugdale, Warner & Martin, Havre, Mont., Crowley, Haughey, Hanson, Gallagher & Toole, Billings, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Audit Services, Inc., as the assignee of three Montana Carpenters Trust Funds, seek to recover from North Montana Service Industries, Inc. (North Montana), a corporation, the amount of unpaid contributions to the trusts. The contributions were required by the terms of a collective bargaining agreement between the Havre Contractor's Association and the Central Montana District Council (Association) and Local Union No. 718 (Local 718). The question here is whether North Montana was a party to those agreements. Jurisdiction is found in 29 U.S.C. §§ 185 and 1132(e)(1).

In 1968, the Association and Local 718 entered into a collective bargaining agreement which expired in April 1971. Local 718 advised the Association that it wanted to open negotiations on a new contract. No agreement having been reached by July 1971, Local 718 ordered a strike and established pickets. The pickets were withdrawn in October 1971 because Local 718 believed

that an agreement had been reached. An agreement was not reached, however, and pickets were again established sometime after May 1972. Picketing continued until October 1972. North Montana was never picketed. On October 25, 1972, North Montana wrote the following letter to the Association:

> Havre Contractors Assoc.
>
> Havre, Montana
>
> Gentleman (sic):
> This letter gives authorization to your labor negotiating committee to negotiate for our company with the carpenter union to settle the present strike.
>> Sincerely,
>> /s/ J.L. Sleeter
>> J.L. Sleeter Pres.
>> North Montana Service
>> Industries Inc.

In 1972 the Association filed charges against Local 718 with the National Labor Relations Board (NLRB) complaining that Local 718 had attempted to negotiate separately with a member of the Association. In response to the complaint the Association received a letter dated November 8, 1972, from the NLRB, with a copy to Local 718, reading in part:

> Investigation disclosed that the parties have been at an impasse in bargaining over the subject of health and welfare since prior to July 1972. Investigation further disclosed the Union has contacted individual members of the employer association separately in an effort to get them to sign individual contracts. Inasmuch as these contacts occurred after the impasse in bargaining, and after approximately 14 requests by the Union for a list of the Association's members and their powers of attorney (over a period of more than a year) proved unsuccessful; I conclude further proceedings are not warranted and I am therefore refusing to issue complaint.

At a meeting between Local 718 and the Association, held on November 1, 1972, letters of authority from the contractors to

the Association were displayed to Local 718 and were copied verbatim by Local 718 into its minutes of the meeting. North Montana's letter of October 25, 1972, was among them. No agreement was reached at the November 1, 1972, meeting. By letter dated March 8, 1973, Local 718 noticed a meeting for March 20, 1973, and demanded of the Association a list of members who had agreed to be bound. At the meeting a list was displayed and copied into Local 718's minutes. It did not contain the name of North Montana. The minutes of the meeting of March 20, 1973, reflect: "The employer stated that this was not a complete list. They further stated at least one more to get." The identity of the "one more" was not revealed.

A written request was made by Local 718 on June 14, 1973, for an updated list, and in response, on June 21, 1973, the attorneys for the Association sent a written list of its members to Local 718. This list contained some names not shown on any previous list, but it did not contain the name of North Montana. There were further negotiating sessions held March 28, April 11, April 24, May 15, and June 13, 1975. An agreement was reached at the May meeting. Local 718 never voiced an objection to the fact that North Montana was not included in the Association membership lists.

North Montana did not orally or in writing withdraw from the Association, but the Association left North Montana's name from the list of the contractors it represented because it had not contacted Sleeter, President of North Montana, "to see if he wanted to be on it." It is apparent from the lists that membership in the Association changed from time to time. Some names were added and some names were deleted. Local 718 knew this. Thus, Rosman testified:

> A We wanted their full list of their membership and by what authority they would bargain and bind those to any agreement arrived at.

Q Who was going to bind whom?

A The Havre Contractors Association.

Q Would have the authority to bind?

A Their members.

Q Were you given any—well, did you continue to demand lists after that November 1st meeting?

A Yes, I did.

Q You had been given lists. How often did you demand them?

A I think nearly every meeting that we held.

Q After you had been given the list of the November 1 meeting, why weren't you satisfied with those?

A Well, any contractor could join. The membership list could change at any point. Any contractor that came in and signed his bargaining rights could do so at virtually any time.

Q Why would that be a concern to you whether someone joined?

A I wanted to know who was to be bound and who I could approach. I had just gotten into a problem over approaching one of their members. I had charges filed against me because of this.

The Association, after the abortive meeting of November 1, 1972, did not purport to represent North Montana and did not in fact represent it. It did none of the things that a bargaining agent might be expected to do. It did not determine how North Montana was faring; it did not seek its advice on the various issues involved; it did not advise it of the progress of the negotiations.

Local 718 knew that the Association was not bargaining for North Montana. Rosman, its agent, sought out Sleeter of North Montana and attempted to bargain with North Montana individually.[1]

1. There is a conflict in the evidence on this point. Sleeter testified to the meetings and conversations. At the trial Rosman denied any such conversations, but in his deposition he testified that, after the strike started, he tried to bargain individually with Sleeter of North Montana. It appears to me that it is probable that he would have done so. As indicated by his testimony, one reason he wanted lists of members was so that he could know whom he

Once collective bargaining has begun, neither the employer group nor an individual employer nor the union may withdraw from such bargaining without the consent of the opposing party, absent unusual circumstances. *NLRB v. Associated Shower Door Co.*, 512 F.2d 230 (9th Cir. 1975). Unusual circumstances excusing a withdrawal are found in cases where the negotiations have reached an impasse and unequivocal notice of withdrawal is given to the union by an employer. *Fairmont Foods Co. v. NLRB*, 471 F.2d 1170 (8th Cir. 1972). The instant case, however, is not typical. In most of the cases where withdrawal has been excused on the ground of an impasse, the employer has given notice, either to the multiemployer bargaining unit or the union, of his withdrawal from the unit. *Site-Con Industries, Inc.*, 200 N.L.R.B. 46 (1972); *Robert Becker d/b/a Lenox Grill*, 170 N.L.R.B. 1027 (1968); *Waitresses Union, Local 327*, 131 N.L.R.B. 198 (1961). In this case North Montana did not withdraw from the unit; rather the unit withdrew from it, and the question arises whether under these circumstances the court may find that the employer is not bound by the agreement reached.

I hold that, under the circumstances existing here, North Montana was not bound by the collective bargaining agreement. North Montana's relationship with the Association was equivocal from the beginning. By letter of October 25, 1972, it did not expressly become a member of the group. The authorization was given for the "present strike" and was to the "labor negotiating committee." The nature of the letter did not in my opinion limit the authority of the Association to act for North Montana, but it may have created some doubts in the mind of the Association as to just what its relationship with North Montana was. There is no evidence that the Association assumed any obligation to Local 718 or to North Montana to continue to bargain for it—no showing that the Association was not free at any time to drop North Montana. Over two years and six

months passed between the date of the initial authority from North Montana and the contract. Not only did time pass, but the membership of the Association changed.

I think that there was an impasse between November 1, 1972 and May 15, 1975; that the Association had no continuing obligation to represent North Montana, did not represent North Montana, and did not purport to represent North Montana; that Local 718 knew the situation and attempted to bargain with North Montana individually. The circumstances were unusual and North Montana is not bound.

Judgment will be withheld pending a determination of defendant's rights to attorneys' fees. When next in Great Falls the court will hold a hearing to determine the relationship between Audit Services and the trusts involved. That relationship may have a bearing.

could approach. When he found out that North Montana was not on a membership list, it seems likely that he would approach it. I so find.