H & D, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 79–7198.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1980.

Decided Oct. 8, 1980.

Rehearing and Rehearing En Banc
Denied Dec. 11, 1980.

Certiorari Granted Jan. 18, 1982.
See 102 S.Ct. 1243.

Phillip Offenbacker, Seattle, Wash., for petitioner.

John H. Ferguson, N.L.R.B., Washington, D. C., for respondent.

Before KILKENNY and SNEED, Circuit Judges, and CALLISTER,* District Judge.

CALLISTER, District Judge:

Pursuant to 29 U.S.C. §§ 160(e) and (f), H & D, Inc., has petitioned for review of a National Labor Relations Board decision and order which set aside a favorable decision of an administrative law judge, and found that it had committed an unfair labor practice under section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5) 1976 by withdrawing from a multiemployer bargaining unit during the course of collective bargaining. The NLRB cross–applies for enforcement of its order requiring H & D, Inc., to resume bargaining with the multiemployer unit. We grant the petitioner's application for review and direct that the NLRB's cross–application for enforcement of its order be denied.

* Honorable Marion J. Callister, United States
  District Judge, District of Idaho, sitting by des-    ignation.

BACKGROUND :

H & D, Inc., is a Washington corporation engaged in the manufacture of aluminum doors and windows. For the time period preceding the dispute which gave rise to this case, the Ironworkers Shopmen Local Union No. 506 served as the collective bargaining representative for about one half of H & D's production employees. As a general practice in prior contract negotiations with the union, H & D would bargain jointly with two other employers, Bel–Window and Herzog Aluminum Co., even though there was no duly organized employer's bargaining unit, nor any formal bargaining agreement.

The negotiations which gave rise to this action began in early 1977 when the union sent out reopening letters and contract proposals to H & D, Bel–Window, and Herzog Aluminum for a contract to succeed the agreement that was to expire later that year. Between the first bargaining session on February 22 and April 20, seven bargaining sessions were held without substantial agreement as to the terms of the new contract. Two employer proposals were decisively rejected by the union members. On April 25, a third employer's proposal was submitted to the union membership for ratification but was defeated by a vote of 28 to 14. The union then unanimously elected to strike and commenced picketing two days later.

During the negotiations for a new contract, the H & D employee union members met several times to discuss their dissatisfaction with their union representation. When an employer proposal was rejected on April 2, almost all of the H & D employees submitted written resignations from the union and attempted to file a decertification petition with the NLRB. The decertification petition was apparently procedurally defective and was later withdrawn by the employees. None of H & D's employees

participated in the strike authorized by the April 25 vote.

On April 18 H & D asked to withdraw from negotiations because of its employees' resignation from the union, but the union would not consent. At the beginning of May, several days after the strike began, the union proposed resubmitting the contract, rejected by the rank–and–file on April 25, for a vote on May 3. The reconsideration vote was scheduled but then cancelled. The general manager of H & D notified the union by a letter dated May 3 that a bargaining impasse had been reached when the union suggested a second vote on a prior proposal which had been turned down by the membership, and because of the impasse they were withdrawing from the contract negotiations.

The union subsequently filed charges against H & D for refusing to bargain as part of the multiemployer group, and a hearing was had before the administrative law judge on August 18, 1977. The administrative law judge found that H & D had not committed an unfair labor practice by withdrawing from the joint negotiations because there was no multiemployer bargaining unit as defined by the National Labor Relations Board decision. *Findings of Fact and Conclusions of Law of Administrative Law Judge Sahm*, October 3, 1978, at 9.[1] The administrative law judge did not make a finding concerning an impasse in negotiation because of the NLRB's decision in *NLRB v. Hi–Way Billboard, Inc.*, 206 N.L.R.B. 22 (1973), *enforcement denied*, 500 F.2d 181 (5th Cir. 1974) where the Board indicated that even a genuine impasse did not create an "unusual circumstance" allowing the unilateral withdrawal of an employer from bargaining. Nor did the administrative law judge address H & D's contention that the en masse resignation of its employees from the union created an "un-

---

1. The original case heard before the administrative law judge included three respondents, H & D, Inc., Herzog Aluminum Co., and Bel–Window Division of Belknap Glass Co. Prior to the August hearing the complaint against Herzog was dismissed. The administrative law judge found that Bel–Window did not commit an unfair labor practice because they did not withdraw from negotiation, and the Board sustained those findings. Thus neither Bel–Window nor Herzog are parties in this appeal.

usual circumstance" justifying withdrawal from negotiations.

On review before the NLRB the Board rejected the administrative law judge's conclusion that there was no multiemployer bargaining unit at the time of H & D's withdrawal, but instead found that based on the controlling history of the collective bargaining an employer bargaining unit did exist. Addressing the contention that the bargaining impasse created an "unusual circumstance" justifying H & D's withdrawal, the Board summarily concluded "that the evidence does not establish that an impasse existed . . . ." *H & D, Inc.*, 240 N.L.R.B. No. 161, p. 3 (1979). Finally, the Board concluded that the resignation of H & D's employees from the union did not create an "unusual circumstance" allowing its withdrawal.

H & D seeks review of the Board's findings contending that the determination that there was no impasse and that a multiemployer bargaining unit existed at the time of its withdrawal from negotiations was not supported by substantial evidence, and that the resignation en masse of H & D's employees was an "unusual circumstance" exculpating H & D's withdrawal.

*Impasse*

█ An employer who engages in collective bargaining as part of a multiemployer unit commits an unfair labor practice by withdrawing from the unit after bargaining has commenced without the consent of the opposing party, absent "unusual circumstances." *See NLRB v. Associated Shower Door Co., Inc.*, 512 F.2d 230, 232 (9th Cir. 1975), *cert. denied* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975); *NLRB v. Brotherhood of Teamsters etc., Local No. 70*, 470 F.2d 509 (9th Cir. 1972), *cert. denied* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 54 (1973); *Retail Associates, Inc.*, 120 N.L.R.B. 388 (1958). Based on the letter of May 3, 1977, from the general manager of H & D, it is undisputed that H & D withdrew from negotiations after bargaining had begun without the consent of the union. H & D contends, however, that its withdrawal was excused because of "unusual circumstanc-

es," viz., an impasse had been reached in the negotiations.

█ It should be noted that the Board has steadfastly maintained in its rulings on the subject that a bargaining impasse does not meet the requirements of an "unusual circumstance" as established by *Retail Associates, supra*, permitting withdrawal from a multiemployer group. *See, Hi–Way Billboard, Inc., supra*. Numerous circuit courts of appeals have rejected this position of the NLRB. Recently, this court declared in *Authorized Air Conditioning Co. v. NLRB*, 606 F.2d 899 (9th Cir. 1979), citing cases from the Second, Third, Fifth, Eighth and Ninth Circuits that "[t]he Courts of Appeals have consistently recognized an impasse in negotiations as justification for a unilateral withdrawal from a multi–employer unit." 606 F.2d at 907. While the Board argues on this appeal that its position, considering the competing policy considerations, is compelling and entitled to judicial acceptance, and that in recent cases the courts' misconceptions of the Board's rulings have been clarified, these contentions are not persuasive and appear to be disposed of in *NLRB v. Associated Shower Door Co.*, 512 F.2d 230, 232 (9th Cir. 1975), and *NLRB v. Beck Engraving Co.*, 522 F.2d 475 (3rd Cir. 1975). We find no cogent reason at this time to challenge the position taken by this court in *Authorized Air Conditioning Co. v. NLRB, supra*.

Thus, we are left to turn to the record to determine if the Board's finding that there was no impasse can be sustained. This court acknowledges the long–standing standard of review for factual findings of the NLRB is they must be sustained "if supported by substantial evidence on the record considered as a whole . . . ." 29 U.S.C. §§ 160(e), (f); *see, Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

A bargaining impasse has been described as a situation where the "members could well conclude that 'there was no realistic prospect that continuation of discussion at that time would have been fruitful' . . . [citations omitted]." *NLRB v. Independent*

*Ass'n of Steel Fabricators*, 582 F.2d 135, 147 (2nd Cir. 1978). A number of relevant criteria have been identified in determining whether an impasse exists. *See* Murphy, *Impasse and the Duty to Bargain in Good Faith,* 39 Univ.Pitt.L.Rev. 1, 6–16 (1977). The NLRB has recognized a number of these criteria:

> Whether a bargaining impasse exists is a matter of judgment. The bargaining history, the good faith of the parties in negotiations, the length of the negotiations, the importance of the issue or issues as to which there is disagreement, the contemporaneous understanding of the parties as to the state of negotiations are all relevant factors to be considered in deciding whether an impasse in bargaining existed.

*Taft Broadcasting Co.*, 163 N.L.R.B. 475, 478 (1967); *enforced sub nom. American Fed. of Television & Radio Artists v. NLRB*, 395 F.2d 622 (D.C.Cir.1968).

Negotiations on a new contract began one month before the effective termination date of the old agreement. In the ensuing three months until H & D officially withdrew from the bargaining, seven bargaining sessions were held and three employer proposals were referred to and rejected by the union membership. The record manifests a continuing disagreement of the central issue of the economic aspects of the contract, i. e., wages, health and pension benefits.[2] The administrative law judge indicated in his opinion that "the parties had been 'deadlocked' on monetary proposals since shortly after negotiations for a new contract had begun and still continued as of the date this trial commenced on August 18." *Findings of Fact and Conclusions of Law of Administrative Law Judge Sahm, supra,* at 14.

The record also reveals that shortly after H & D requested permission to withdraw from the bargaining group but prior to their unilateral withdrawal, the union, after voting to strike and without further concessions, offered to resubmit an employer's proposal for a vote. While this offer could have indicated some willingness by the union to change its position, this contention appears manifestly unlikely considering that the exact same proposal had been rejected by a 2 to 1 margin a week earlier, and the proposed vote was subsequently cancelled. The H & D employees became upset with the union's strike authorization, resigned from the union, and continued to work even after a strike was called. Finally, H & D's withdrawal from the multiemployer bargaining unit did not occur until after the strike had commenced.

The subsequent history of bargaining between the remaining employers, while not dispositive of the question of a deadlock, supports H & D's contention that at the time it withdrew negotiations were at an impasse. The union continued its strike and met several times with the employers to work out an agreement; however, at the time of the hearing before the administrative law judge the parties had still not reached a resolution on the economic issues and did not appear to be willing to make any further concessions.

From the foregoing review of the record, we cannot accept the Board's cryptic conclusion that the evidence does not establish that an impasse existed. On the contrary, the evidence presented in the record establishes a negotiating impasse at the time of H & D's withdrawal from the multiemployer bargaining unit.

---

**2.** Raymond Glidden, a union negotiator, testified that these issues were the center of dispute at most of the bargaining sessions. When questioned about the April 20 session, which was the last meeting before H & D's withdrawal, he responded:

> "Q. And what were the proposals exchanged at this meeting? Well, what were the areas of difference, put it that way, the areas in controversy?

> A. Well, again, we go back to the wages and the health and welfare plan and the dental plan and the pension.
> Judge Sahm: They never agreed on those at any time; is that correct, the three you just mentioned?
> The Witness: Yes." 
> *Record* at 71.

Due to our determination that H & D was justified in withdrawing from the multiemployer bargaining unit because of an impasse in negotiations, it is unnecessary to reach the question of whether there was substantial evidence to support the Board's finding that there was a multiemployer bargaining unit, nor is it expedient to address the problem of whether the en masse resignation of H & D's employees from the union was an "unusual circumstance" permitting employer withdrawal.

The petition for review of H & D, Inc., is hereby GRANTED; and the Board's cross–application for enforcement of its order will be DENIED.

SO ORDERED.