1332

SEATTLE AUTO GLASS, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

WEATHERFORD MOTORS,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Automobile Salesmen's Local 1095, Unit-
ed Food and Commercial Workers,
AFL-CIO, Intervenor.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

Automobile Salesmen's Local 1095, Unit-
ed Food and Commercial Workers,
AFL-CIO, Intervenor,

v.

GOLDEN BEAR MOTORS, INC., d/b/a
Golden Bear Ford, et al., Respondents.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BIRKENWALD, INC., d/b/a Birkenwald
Distributing Company, Respondent.

WESTERN PACIFIC ROOFING
CORPORATION, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

United Slate, Tile & Composition Roof-
ers, Damp & Waterproof Workers' As-
sociation Local No. 36, Intervenor.

Nos. 79–7603, 79–7578, 80–7050,
79–7520 and 79–7476.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 5, 1980.

Decided Feb. 25, 1982.

Robert B. Vining, Jr., Clayton, Mo., for Seattle Auto Glass.

Robert G. Hulteng, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for Weatherford Motors, Inc.

Ralph B. Hoyt, Marcia Hoyt, Hoyt & Goforth, Oakland, Cal., for Golden Bear Motors, Inc., et al.

William H. Simmons, Seattle, Wash., for Birkenwald, Inc., etc.

Peter Szabadi, Acret & Perrochet, Los Angeles, Cal., for Western Pacific Roofing Corp.

Elliott Moore, Lafe E. Solomon, Washington, D. C., William S. H. Chapman, Chapman and Rosen, Santa Monica, Cal., John Elligers, Washington, D. C., for N. L. R. B.

W. Daniel Boone, Victor J. Van Bourg, Michael B. Roger, Van Bourg, Allen, Wein-

berg & Roger, David A. Rosenfeld, on the brief, San Francisco, Cal., for intervenors.

Before SNEED and FARRIS, Circuit Judges, and EAST *, District Judge.

SNEED, Circuit Judge:

In these cases, involving four different labor disputes, the National Labor Relations Board concluded that employers violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5) (1976), by impermissibly withdrawing from multiemployer bargaining units. As a result, the Board contends, each employer should be bound by the agreement subsequently reached by the respective unit and union. Each employer argues that its withdrawal was permissible and that it is not bound by an agreement signed after it withdrew from its unit. Pursuant to 29 U.S.C. § 160(e) (1976), the Board petitions for enforcement of its orders. The employers challenge the Board's orders pursuant to 29 U.S.C. § 160(f) (1976). In light of *Charles D. Bonanno Linen Service v. NLRB*, — U.S. —, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982), we enforce the Board's orders against Weatherford Motors, Inc., Golden Bear Motors, Inc., Seattle Auto Glass, Inc., and Western Pacific Roofing Corp., and decline to enforce the Board's order against Birkenwald, Inc. Although each of these cases was briefed and argued, although not submitted, prior to the *Bonanno* decision, the facts and issues of each are sufficiently clear to enable us to reach a decision without additional briefing or argument.

## I.

### THE BONANNO DECISION

The employers in these four cases challenge the rules the Board has developed to govern withdrawal from multiemployer bargaining units following an impasse in bargaining. Congress committed primary responsibility for balancing the conflicting interests involved in formulating rules concerning multiemployer bargaining to the Board. *NLRB v. Truck Drivers Local 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957). Despite the limited standard of judicial review, a number of courts, including this circuit, had concluded that the Board's rules governing withdrawal from multiemployer bargaining units did not reasonably balance the conflicting interests. *See, e.g., H & D, Inc. v. NLRB*, 665 F.2d 257 (9th Cir. 1980), *mandate stayed*, (9th Cir. Dec. 17, 1981), *cert. granted, opinion vacated and remanded*, — U.S. —, 102 S.Ct. 1243, 71 L.Ed.2d 440 (1982); *NLRB v. Independent Association of Steel Fabricators*, 582 F.2d 135 (2d Cir. 1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979); *NLRB v. Beck Engraving Co.*, 522 F.2d 475 (3d Cir. 1975). To resolve these differences, the United States Supreme Court granted certiorari in *NLRB v. Charles D. Bonanno Linen Service, Inc.*, 630 F.2d 25 (1st Cir. 1980), a decision holding that an impasse in bargaining did not justify withdrawal from the unit. The Supreme Court affirmed the First Circuit. *Charles D. Bonanno Linen Service, Inc. v. NLRB*, — U.S. —, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982). This decision controls the cases before us.

The Court recognized that a different balance of the conflicting legitimate interests involved in withdrawal by an employer from a multiemployer bargaining unit because of an impasse in bargaining might have been struck. It based its affirmance on the proposition that "assessing the significance of impasse and the dynamics of collective bargaining is precisely the kind of judgment that ... should be left to the Board." *Id.* at —, 102 S.Ct. at 725.

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

After *Bonanno*, therefore, an impasse in bargaining in a multiemployer unit is not an "unusual circumstance" permitting withdrawal by any party from a multiemployer bargaining unit. *Id.* at —— —— ——, 102 S.Ct. at 724–25. The signing of individual separate agreements that will survive unit negotiations, on the other hand, is a different matter. Those, the Court indicated, are clearly inconsistent with, and destructive of, group bargaining. By signing such an agreement, the union has so effectively fragmented and destroyed the integrity of the bargaining unit as to create an unusual circumstance under the Board's rules. *Id.* We now turn to the four disputes before us.

## II.

### WEATHERFORD MOTORS, INC. V. NLRB, NO. 79–7578, AND NLRB V. GOLDEN BEAR MOTORS, INC., NO. 80–7050

■ The issue in these cases was whether an impasse existed when four employers withdrew from a multiemployer bargaining unit. The Court's *Bonanno* decision makes the issue moot. An impasse in bargaining is not an "unusual circumstance" justifying withdrawal. No other grounds permitting withdrawal exist, inasmuch as an administrative law judge found that each employer was bound by the multiemployer unit's agreement, and the Board affirmed that finding. *Golden Bear Motors, Inc.*, 245 N.L. R.B. 300 (1979). Thus, we must grant enforcement in No. 79–7578 and No. 80–7050.

## III.

### SEATTLE AUTO GLASS V. NLRB, NO. 79–7603

■ This case posed the question whether the existence of an impasse, stipulated to by the parties, and the signing of intent agreements, justified the employer's withdrawal from the bargaining unit. The association and the union executed the master agreement on August 1, 1977. The parties

stipulated that they reached an impasse on August 9 concerning the glassmen agreement. On August 12, the union struck and picketed members of the association, including Seattle Auto Glass. The union offered to stop picketing members of the association who signed the master agreement and an interim agreement covering glassmen, the terms of which were those offered by the union on August 9. Six of the forty-one members of the unit signed these agreements between August 12 and September 29. On August 15 the employer informed the union and the association that it was withdrawing from the multiemployer bargaining unit. The union stated on August 31 that it would not accept the withdrawal. Negotiations between the union and the association resumed on September 1, and a final agreement was reached on September 23.

Under *Bonanno*, neither impasse nor the signing of *interim* agreements that do not survive the final master agreement, as opposed to separate agreements that do survive unit negotiations, is an "unusual circumstance" justifying withdrawal. *Charles D. Bonanno Linen Service, Inc. v. NLRB, supra*, —— U.S. at —— —— ——, 102 S.Ct. at 724–26. Here only *interim* agreements were signed. In light of *Bonanno*, we are required to enforce the order of the Board in No. 79–7603.

## IV.

### WESTERN PACIFIC ROOFING CORP. V. NLRB, NO. 79–7476

Western Pacific Roofing Corp. ("Western") was one of thirty-two members of the Roofing Contractors Association of Southern California (the "association"), a multiemployer bargaining unit. On July 15, 1977, negotiations began between the Roofers Union (the "union") and the association to replace a contract due to expire August 15. The union struck all members of the association on August 15 when agreement had not been reached, but the negotiations

continued without interruption. Three proposals had been rejected by the union when, after concessions by both sides, the negotiators submitted another proposal to the union membership on September 12. On September 15, Western announced its intention to withdraw from the unit. Western's president stated that he decided to withdraw because it appeared that the membership would approve the contract and he did not want to be bound by it. The union membership ratified the proposal on September 17. An administrative law judge concluded that Western's withdrawal from the union was ineffective and the Board affirmed that conclusion. *Western Pacific Roofing Corp.*, 244 N.L.R.B. 501 (1979).

Western argued that its withdrawal was permissible because the negotiations had reached impasse. After the *Bonanno* decision the argument fails.

■■■ Western also argues that extreme financial distress justifies its withdrawal. The Board has concluded that financial distress may be an "unusual circumstance" justifying withdrawal. *Spun-Jee Corp.*, 171 N.L.R.B. 557 (1968); *U. S. Lingerie Corp.*, 170 N.L.R.B. 750 (1968). A member of a multiemployer bargaining unit may demand special treatment if it makes clear from the start of negotiations that it has special problems. *Genesco, Inc. v. Joint Council 13, United Shoe Workers of America*, 341 F.2d 482, 489 (2d Cir. 1965). But, although Western's financial difficulties began long before the negotiations began, Western never demanded special treatment, and nothing happened during the course of the negotiations to worsen its financial status. Since Western entered into negotiations knowing of its financial problems and did not demand special treatment, it cannot withdraw from the multiemployer bargaining unit at the last minute claiming financial distress.

■ The Board ordered Western to reinstate two employees who quit after Western refused to be bound by the contract ratified on September 17. The Board further ordered that they be awarded back pay. The Board's conclusion that Western violated section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1976), by constructively discharging the employees who wanted to remain in the union is supported by substantial evidence.

We affirm the Board's order in No. 79–7476.

### V.

### NLRB V. BIRKENWALD, INC., NO. 79–7520

■ Birkenwald (the "employer"), a beer and wine distributor, was a member of a multiemployer bargaining unit, here designated as Allied, composed of eleven members. Allied began negotiations with General Teamsters Local 174 on July 27, 1977, to replace a contract that had expired on May 15. On October 29 the union membership rejected Allied's "final offer" and voted to strike, but never went on strike. The largest member of the unit, Premium, signed a *separate permanent agreement* with the union on November 10. On the same day, upon learning that Premium had signed a separate agreement with the union, the employer told the members of Allied that it was withdrawing from the unit. The union received notification of the withdrawal on November 14, and responded that it did not consent to the withdrawal on November 15. The union membership ratified a contract proposed by Allied on November 19, and Birkenwald refused to be bound by that agreement.

An administrative law judge concluded that no impasse existed at the time of the employer's withdrawal from Allied. Also he concluded that Birkenwald withdrew because it feared that Allied and the union would reach terms that it did not favor. The administrative law judge further concluded that the employer's withdrawal from this unit was not justified by the union's agreeing to a separate *permanent* contract with Premium. He analyzed Premium's withdrawal as presenting a fragmentation issue: Whether the loss of one of eleven employers, whose employees constituted 30% of those employed by the unit, sufficiently fragmented the unit so as to amount

to unusual circumstances justifying withdrawal by the employer. He did not address this court's decision in *NLRB v. Associated Shower Door Co.*, 512 F.2d 230 (9th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975). The Board affirmed the administrative law judge's order and ordered Birkenwald to give retroactive effect to the agreement signed by Allied and the union on November 19. *Birkenwald, Inc.*, 243 N.L.R.B. 1151 (1979).

Whether impasse existed at the time of employer's withdrawal no longer matters. However, the union entered into a *separate permanent agreement* with Premium, a substantial member of the unit. This "effectively fragmented and destroyed the integrity of the bargaining unit." *Charles D. Bonanno Linen Service*, 243 N.L.R.B. 1093, 1096 (1979). Thus, the remaining members of the unit were privileged to withdraw under the authority of the *Bonanno* decision. *See Charles D. Bonanno Linen Service v. NLRB*, —— U.S. ——, ——, 102 S.Ct. 720, 726, 70 L.Ed.2d 656 (1982). Employer withdrawal, therefore, was justified.

We decline to enforce the Board's order.

ENFORCEMENT GRANTED IN NOS. 79–7578, 80–7050, 79–7603, 79–7476. ENFORCEMENT DENIED IN NO. 79–7520.